UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
UNITED STATES OF AMERICA )
                         )
          v.             )    Criminal No. 02-30043-MAP
                         )
(1) ALEKSEI SAFANOV,     )
(2) IVAN TELEGUZ,        )
(3) ROMAN ZHIRNOV,       )
(4) ANDREY BUYNOVSKIY,   )
(5) MICHAEL QUICKEL,     )
          Defendants.    )
```

<u>Government's Response to Defendants' Pretrial Motions</u>

The United States of America, by Michael J. Sullivan, United States Attorney for the District of Massachusetts, respectfully submits this response to the defendants' pretrial motions.

**Aleksei Safanov**

Motion to Suppress Search and
<u>Seizure of Defendant's Car and Person</u>

The government opposes this motion.

The government will prove at an evidentiary hearing that on October 26, 2002, at approximately 10:00p.m., two officers from the West Springfield Police Department drove to the area of 42 Bliss Street.  The officers were acting in response to a 911 caller who stated that there was a green Jeep automobile in front of his house and that a man inside of the Jeep had an AK-47 rifle with him.

When the officers approached 42 Bliss Street, they observed the green Jeep with a single male passenger.  The officers approached the Jeep and ordered the passenger to place his hands outside of the Jeep's window.  As the officers arrived at the

back windows of the Jeep, they saw on the floor behind the driver's seat what appeared to be a rifle with a magazine in a locked position.  At that time, the officers ordered the driver, Aleksei Safanov, out of the vehicle and placed him in handcuffs. A records search revealed that Safanov had a suspended driver's license and that he did not have a firearms identification card. As a result, he was placed under arrest.  Safanov did not make any statements to the West Springfield police officers after he was arrested.

In Terry v. Ohio, 392 U.S. 1, 22 (1968), the Supreme Court recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to effect an arrest."  In determining whether a particular investigatory seizure or search violates the Fourth Amendment's protection against unreasonable searches or seizures, the inquiry is the now familiar two-prong test announced in Terry -- "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place."  Terry, 392 U.S. at 19-20; see United States v. Sharpe, 470 U.S. 675, 682 (1985); United States v. Stanley, 915 F.2d 54, 55 (1st Cir. 1990); United States v. Trullo, 809 F.2d 108, 111 (1st Cir. 1987).

The Supreme Court in <u>Terry</u> recognized: "[T]here is `no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.'" <u>Terry</u>, 392 U.S. at 21, quoting, <u>Camara v Municipal Court</u>, 387 U.S. 523, 534-535, 536-537 (1967). To assess the need to search, the Court established the "articulable suspicion" standard against which officers' conduct must be measured: "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." <u>Terry</u>, 392 U.S. at 21.

The articulable suspicion standard is not a stringent one. "The Fourth Amendment requires `some minimal level of objective justification' for making the stop." <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1989), quoting, <u>INS v. Delgado</u>, 466 U.S. 210, 217 (1984) (emphasis added). As stated by the United States Supreme Court:

> That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means "a fair probability that contraband or evidence of a crime will be found," Illinois v. Gates, 462 U. S. 213, 238 (1983), and the level of suspicion required for a Terry stop is obviously less demanding than that for probable cause, see United States v. Montoya de Hernandez, 473 U.S. 531, 541, 544 (1985).

<u>Sokolow</u>, 490 U.S. at 7. <u>See</u> <u>United States v. Jackson</u>, 918 F.2d 236, 239 (1st Cir. 1990). <u>See also</u> <u>Alabama v. White</u>, 496 U.S. 325, 330 (1990) ("Reasonable suspicion can arise from information

3

that is less reliable than that required to show probable

cause.").

The second prong of the <u>Terry</u> standard, the reasonableness

of safety measures taken during an investigatory stop, is as

follows:

> When an officer is justified in believing that the
> individual whose suspicious behavior he is investigating at
> close range is armed and presently dangerous to the officer
> or to others, it would appear to be clearly unreasonable to
> deny the officer the power to take necessary measures to
> determine whether the person is in fact carrying a weapon
> and to neutralize the threat of physical harm. . . The
> officer need not be absolutely certain that the individual
> is armed: the issue is whether a reasonably prudent man in
> the circumstances would be warranted in the belief that his
> safety or that of others was in danger.

<u>Terry</u>, 392 U.S. at 24 (emphasis added).  See <u>Trullo</u>, 809 F.2d at

113.  As stated by the Supreme Court at that time: the second

prong is "concerned with more than the governmental interest in

investigating crime -- there is the more immediate interest of

the police officer in taking steps to assure himself that the

person with whom he is dealing is not armed with a weapon that

. . . could be used against him."  <u>Terry</u>, 392 U. S. at 23.

"Certainly it would be unreasonable to require that police

officers take unnecessary risks in the performance of their

duties."  <u>Id</u>.

Although articulable suspicion is also the measure of

reasonableness under the second prong of <u>Terry</u>, it is not

necessary that the specific facts observed in any rigorous sense

constitute proof that the officer or others are in danger. "The

standard necessary to establish reasonable suspicion `is considerably less than proof . . . by a preponderance of the evidence.'" <u>United States v. Kikumura</u>, 918 F.2d 1084 (3rd Cir. 1990), quoting, <u>Sokolow</u>, 490 U.S. at 7.

Fifteen years after <u>Terry</u>, in <u>Michigan v. Long</u>, 463 U.S. 1032 (1983), the Supreme Court addressed whether a <u>Terry</u> justified protective search for weapons could extend to an area beyond the person in the absence of probable cause to arrest. The Court held that a protective search of the passenger compartment of a vehicle is reasonable under the principles articulated in <u>Terry</u> and later cases. <u>Michigan v. Long</u>, 463 U.S. at 1049. In so doing, the Court emphasized that the basic rationale of <u>Terry</u> is applicable to passenger compartment searches. It specifically stated: "To engage in an area search, which is limited to seeking weapons, the officer must have an articulable suspicion that the suspect is potentially dangerous." 463 U.S. at 1052, n.16.

The <u>Michigan v. Long</u> Court noted that in cases after <u>Terry</u>, it had "recognized that investigative detentions involving suspects in vehicles are especially fraught with danger to police officers." 463 U.S. at 1047. <u>See</u> <u>Pennsylvania v. Mimms</u>, 434 U.S. 106 (1977) (per curiam) (officers may order driver out of automobile during traffic stop and frisk for weapons if there is a reasonable belief that person is armed and dangerous); <u>Adams v. Williams</u>, 407 U.S. 143, 146 (1972)(officer, acting on informant's

tip, may frisk driver of automobile to remove weapon not apparent
to officer from outside of car).  The Court also noted that it
had "expressly recognized that suspects may injure police
officers and others by virtue of their access to weapons, even
though they may not themselves be armed." Michigan v. Long, 463
U.S. at 1048.  See Chimel v. California, 395 U.S. 752 (1969)
(search incident to arrest permissibly extends to area from which
the arrestee might gain possession of a weapon or destructible
evidence); New York v. Belton, 453 U.S. 454, 460 (1981)
(passenger compartment of an automobile and any open or closed
containers found therein may be searched incident to the arrest
of recent occupant of vehicle).

Based on Terry and later cases, the Court concluded in
Michigan v. Long:

> [P]rotection of police and others can justify protective
> searches when police have a reasonable belief that the
> suspect poses a danger, that roadside encounters between
> police and suspects are especially hazardous, and that
> danger may arise from the possible presence of weapons in
> the area surrounding a suspect.  These principles compel our
> conclusion that the search of the passenger compartment of
> an automobile, limited to those areas in which a weapon may
> be placed or hidden, is permissible if the police officer
> possesses a reasonable belief based on "specific and
> articulable facts which, taken together with the rational
> inferences from those facts, reasonably warrant" the
> officers in believing that the suspect is dangerous and the
> suspect may gain immediate control of weapons. See Terry,
> 392 U.S. at 21.

463 U.S. at 1049.  See United States v. Taylor, 162 F.3d 12, 20 (
1st Cir. 1998)("Where officers reasonably believe that a suspect
is dangerous, they may search those areas of the car in which a

weapon may be placed or hidden."); <u>United States v. Coleman</u>, 969
F.2d 126, 132 (5th Cir. 1992) ("To determine whether objects in a
car contain weapons, the officer conducting the frisk [of the
car] is authorized to touch objects, or even to open those
objects."); <u>United States v. Paulino</u>, 935 F.2d 739, 747 (6th Cir.
1991) (protective search of passenger compartment of vehicle
under <u>Michigan v. Long</u> extends to cooler which could have
concealed a weapon).

In so holding, the Supreme Court established a bright-line
rule that is not dependent upon the location of the vehicle's
occupants or the control the officers might have over the
occupants.  The Court rejected the argument that it is
unreasonable for an officer to fear that a suspect might injure
him with weapons within the vehicle if the suspect is outside the
vehicle and under the officer's control during the investigative
stop.  463 U.S. at 1051.  The Court pointed out that the suspect
could break away from police control and retrieve a weapon from
his vehicle; the suspect, if not placed under arrest, could gain
access to any weapons after being permitted to reenter the
vehicle; and the suspect could gain access to weapons if
permitted to reenter the vehicle before the <u>Terry</u> investigation
is over.  <u>Id</u>.  <u>See</u> <u>Taylor</u>, 162 F.3d at 20 (Terry stop search of
vehicle for weapons was permitted even though occupants had been
secured and taken to rear of vehicle).

In this case, the West Springfield Police Officers had reasonable suspicion to investigate the 911 call.  They confirmed the 911 caller's statement that a man was sitting in front of 42 Bliss Street in a green Jeep.  As they approached the car, their only command was that the driver place his hands outside of the window of the car.  They then saw the firearm on the floor of the automobile through the window.  See Texas v. Brown, 460 U.S. 730, 740 (1983) ("There is no legitimate expectation of privacy, shielding that portion of the interior of an automobile which may be viewed outside the vehicle by either inquisitive passersby or diligent police officers.")

Thereafter, they detained the defendant for further inquiry and established that he did not have an FID card and that he had a suspended driver's license.  As a result, he was arrested.

Since the search of the green Jeep was lawful, the defendant's motion should be denied.

**Ivan Teleguz**

Motion to Dismiss for Lack of Jurisdiction

The government opposes this motion.

Teleguz urges the Court to apply to this case the Ninth Circuit's decision in United States v. Stewart, 348 F.3d 1132, 1140 (9th Cir. 2003), holding that, absent proof of a connection with interstate commerce, the simple possession of a homemade machine gun does not violate 18 U.S.C. § 922(o)("Section

8

922(o)"). Teleguz argues that the Court should apply the holding in <u>Stewart</u> to one of the statutes charged in this case, 18 U.S.C. § 922(k)("Section 922(k)"), which prohibits the possession of firearms with obliterated serial numbers.

The problem is that while Section 922(o) does not have an interstate commerce requirement on its face, Section 922(k) specifically requires that the government prove that the firearms in question have traveled in interstate commerce. As a result, even the Ninth Circuit has upheld Section 922(k) on interstate commerce grounds. See <u>United States v. Mack</u>, 164 F.3d 467, 473 (9th Cir. 1999). More importantly, the First Circuit has upheld Section 922(k) on interstate commerce grounds. See <u>United States v. Diaz-Martinez</u>, 71 F.3d 946, 953 (1st. Cir. 1995).

<u>Motion to Sever</u>

Teleguz seeks to have his case severed from his codefendants. His motion should be denied because he has failed to demonstrate that he will be prejudiced by standing trial with his coconspirators.

"The decision to grant or deny a motion for severance is committed to the sound discretion of the trial court and we will reverse its refusal to sever only upon a finding of manifest abuse of discretion." <u>United States v. Brandon</u>, 17 F.3d 409, 440 (1st Cir.1994).

In <u>United States v. Nataniel</u>, 938 F.2d 302, 306 (1st Cir. 1991), the First Circuit explained the basic rules relating to

severance.

        In a case involving multiple defendants, Rule 8(b)
governs joinder of defendants and offenses.  Under the rule,
the government may charge serial transactions, and indict
persons jointly, on the basis of what it reasonably
anticipates being able to prove against the defendants,
collectively, measured as of the time the indictment is
handed up. <u>See</u> <u>United States v. Boylan</u>, 898 F.2d 230, 245
(1st Cir.), cert. denied, 498 U.S. 849, 111 S.Ct. 139, 112
L.Ed.2d 106 (1990); <u>United States v. Martinez</u>, 479 F.2d 824,
828 (1st Cir.1973). In the ordinary case, a rational basis
for joinder of multiple counts should be discernible from
the face of the indictment.  <u>See</u> <u>Boylan</u>, 898 F.2d at 245;
<u>United States v. Arruda</u>, 715 F.2d 671, 678 (1st Cir.1983).
A defendant challenging such joinder must carry the devoir
of persuading the trial court that a misjoinder has taken
place. <u>See</u> <u>United States v. Luna</u>, 585 F.2d 1, 4 (1st Cir.),
cert. denied, 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157
(1978).

The indictment charges the defendants with several crimes,

including illegally conspiring[1] to deal in firearms and to

possess firearms with obliterated serial numbers.  These crimes

arise out of a series of related transactions involving, at

various times, all of the defendants.  Since Teleguz has failed

to demonstrate that he will be unfairly prejudiced by the joinder

of defendants and charges in this case, his motion should be

denied.

        <u>Motion to Suppress Secret Recordings</u>

        The government opposes this motion.

        Teleguz concedes that his motion will fail if the government

can prove that one party to the conversations in question

---

        [1]  "In the context of conspiracy, severance will rarely, if
ever, be required." <u>United States v. Searing</u>, 984 F.2d 960, 965
(8th Cir. 1993).

consented to their recording.  The government will prove at an evidentiary hearing that the cooperating witness in this case, Carlos Ortiz, consented to the recording of the conversations Teleguz seeks to suppress.

    Motion to Suppress Identifications

    The government opposes this motion.

    Teleguz challenges his prior identification by government witness Carlos Ortiz and by co-defendant Michael Quickel.

    To determine when admission of a challenged identification would violate a defendant's due process rights, the courts apply a two-prong test.  See Manson v. Brathwaite, 432 U.S. 98, 109-117 (1977); Neil v. Biggers, 409 U.S. 188, 196-201 (1972); United States v. Guzman-Rivera, 990 F.2d 681, 682-683 (1st Cir. 1993). Under the first prong of the test the defendant must show impermissible suggestion by law enforcement officials.  See Guzman-Rivera, 990 F.2d at 682.  Under the second prong, "the court must be persuaded that there was '"a very substantial likelihood of irreparable misidentification."'"  De Jesus-Rios, 990 F.2d 672, 677 (1st Cir. 1993), quoting Simmons v. United States, 390 U.S. 377, 384 (1968), and United States v. Bouthot, 878 F.2d 1506, 1514 (1st Cir. 1989).

    In this case, Teleguz has failed to demonstrate either impermissible suggestion by law enforcement officials or the likelihood that a mistaken identification took place.  As a result, this motion should be denied.

<u>Motion to Suppress Statements</u>

Teleguz seeks to suppress statements he made after his arrest and waiver of his <u>Miranda</u> rights.  He has failed, however, to explain how his statements were coerced by the law enforcement officers.  As a result, his motion should be denied.

<u>Motion to Suppress Videotape Evidence</u>

Teleguz seeks to suppress video tapes of transactions related to this case that included transactions taking place in and near his automobile.  As explained above, "There is no legitimate expectation of privacy, shielding that portion of the interior of an automobile which may be viewed outside the vehicle by either inquisitive passersby or diligent police officers."  <u>Texas v. Brown</u>, 460 U.S. 730, 740 (1983).  Since Teleguz has failed to demonstrate that any of the videotapes in this case pierced interior areas of his automobile other than those that could be seen from outside the vehicle, his motion should be denied.

**Roman Zhirnov**

<u>Motion to Suppress Search and Seizure of Automobile</u>

The government opposes this motion.

Zhirnov seeks to suppress the AK-47 rifle seized from the green Jeep in which Aleksei Safanov was arrested on October 26, 2002.  First, Zhirnov was not present when the firearm was seized and Safanov was arrested.  As a result, he has failed to

12

demonstrate that he had a reasonable expectation of privacy in the vehicle at that time.   Therefore, he does not have standing to bring this motion.

Even if Zhirnov has standing to move to suppress the search of the green Jeep, as explained above, the government will prove at an evidentiary hearing that the search was lawful.

### Andrey Buynovskiy

Motion to Suppress Statements

The government opposes this motion.

Buynovskiy seeks to suppress his post arrest statements on the grounds that they were obtained in violation of his Miranda rights.   The government will prove at a suppression hearing that Buynovskiy's statements were voluntary and in compliance with Miranda.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney


by:   /s/ Kevin O'Regan
Kevin O'Regan
Assistant U.S. Attorney

Date: December 26, 2004

13

<u>Certificate of Service</u>

December 26, 2004

    I certify that on December 27, 2004, I will cause the
foregoing document to be faxed and mailed to counsel for the
defendants.


<u>/s/ Kevin O'Regan</u>
Kevin O'Regan
Assistant U.S. Attorney

14